1
2
3
4
5
6
7
8                         UNITED STATES DISTRICT COURT

9                         EASTERN DISTRICT OF CALIFORNIA

10

11    CODY DICKERSON,                          No.  2:17-cv-01927-TLN-JDP

12                  Plaintiff,

13         v.                                   **ORDER**

14    DAVID SAMSON, individually and as a
      captain of Sutter County Sheriff's
15    Department, JAMES MIDDLETON,
      individually and as a deputy of Sutter County
16    Sheriff's Department, and DEVON SMITH,
      individually and as a deputy of Sutter County
17    Sheriff's Department, and DOES 1
      THROUGH 20, inclusive,
18
                    Defendants.
19

20

21         This matter is before the Court on Defendants David Samson ("Samson"), James

22    Middleton ("Middleton"), and Devon Smith's ("Smith") (collectively, "Defendants") Motion to

23    Dismiss the First Amended Complaint ("FAC").  (ECF No. 16.)  Plaintiff Cody Dickerson

24    ("Plaintiff") filed an opposition (ECF No. 17), and Defendants filed a reply (ECF No. 18).  For

25    the reasons discussed herein, the Court GRANTS in part and DENIES in part Defendants' Motion

26    to Dismiss.

27    / / /

28    / / /

                                              1

## I.   FACTUAL AND PROCEDURAL BACKGROUND

At the time of the events alleged in the instant action, Plaintiff was a 16-year old student at Sutter Union High School.  (ECF No. 12 at 4.)  On September 12, 2015, Plaintiff became engaged in a brief argument during class with another student, Ramos.  (*Id.*)  During that argument, Ramos allegedly pushed Plaintiff and challenged him to a fight.  (*Id.*)  Plaintiff responded, "hella," a slang term which he meant to be construed as "whatever."  (*Id.* at 4–5.)  Plaintiff alleges he had no agreement or understanding at that time that he and Ramos would fight later.  (*Id.* at 5.)

After class ended, and while Plaintiff was walking across the campus, Ramos, who was approximately 100 pounds heavier than Plaintiff, purportedly approached Plaintiff from behind, grabbed him by his backpack, and forcefully threw him to the ground.  (*Id.* at 5–6.)  Ramos then kicked and stomped on Plaintiff and punched Plaintiff approximately six times as Plaintiff lay on the ground.  (*Id.*)  After Plaintiff got to his feet, he told Ramos he would have Ramos arrested if Ramos hit him again.  (*Id.* at 5.)

Plaintiff then proceeded towards the school office to report Ramos's attack, but was again attacked by Ramos.  (*Id.*)  Ramos threw Plaintiff to the ground, kicked him in the head, and stomped on his chest.  (*Id.*)  After Ramos stopped, Plaintiff reported the incident to the principal.  (*Id.*)  A "video on campus recorded the attack" and, after watching the video, the school contacted the Sutter County Sheriff's Office.  (*Id.* at 5, 7.)

Middleton and Smith, deputies employed by the Sutter County Sheriff's Department, were dispatched to the school.  (*Id.* at 3, 5.)  Shortly thereafter, Plaintiff's mother also arrived at the school, and Plaintiff recounted the events to the deputies in front of his mother and the school vice-principal.  (*Id.* at 5, 7.)  Plaintiff alleges Middleton and Smith did not want to investigate the matter because Ramos's father was a law enforcement officer known by the deputies.  (*Id.* at 5.)  Instead, Middleton became visibly angry when Plaintiff said he wanted Ramos arrested for battery.  (*Id.* at 5–6.)  He told Plaintiff his only recourse was to permit the school to conduct an investigation and refused to acknowledge that Plaintiff had sustained any injuries.  (*Id.* at 5.)  Plaintiff further alleges Middleton "badger[ed]" him, yelled at him, accused him of lying about

the incident, and interrogated Plaintiff by asking him what he did to "make [Ramos] snap." (*Id.* at 5–6.)  Middleton also told Plaintiff's mother that Ramos's father was "one of us." (*Id.* at 6.)  After the "interrogation" Middleton "had Plaintiff sign" a Citizen Arrest form for misdemeanor battery, even though neither Middleton nor Smith ever explained the form to Plaintiff or his mother.  (*Id.*)  It does not appear from the FAC that Middleton or Smith ever arrested Ramos.

Later that day Middleton had a telephone conversation with Plaintiff's father ("Mr. Dickerson"), who was a police sergeant with the Town of Danville.  (*Id.*)  Middleton allegedly told Mr. Dickerson that Ramos was "one of us," and that Plaintiff was at fault for the attack.  (*Id.*)  Yet, when Mr. Dickerson asked Middleton what Plaintiff had done to "justify the assault and battery by Ramos, Middleton was silent." (*Id.*)  Thereafter, Mr. Dickerson contacted Samson, a captain employed by the Sutter County Sheriff's Department, to voice his concerns about Middleton's conduct.  (*Id.* at 3, 7.)  He also provided Samson a photograph showing a fresh shoeprint on Plaintiff's backpack, which was allegedly consistent with Plaintiff's version of events.  (*Id.* at 7.)  Based on his conversation with Mr. Dickerson, Samson agreed to direct Middleton to return to the high school and conduct a follow-up investigation.  (*Id.*)

On September 21, 2015, when Middleton and Smith returned to the high school the second time, they had Plaintiff "pulled from class," interrogated him "in an intimidating and threatening manner," and then arrested and cited him for inciting a fight (a misdemeanor).  (*Id.*)  The FAC does not indicate that Middleton or Smith interviewed any other individuals a second time besides Plaintiff, or that they re-reviewed the school's video footage of the incident.  (*See generally id.*)  When Mr. Dickerson later contacted Samson and asked to know the basis for the citation, Samson told him that, after the initial assault, as Plaintiff was walking towards the principal's office, he turned around and told Ramos "I'm going to kick your ass," which constituted incitement.  (*Id.* at 7–8.)

Plaintiff alleges Samson's statement to his father was "a complete fabrication" by Defendants.  (*Id.* at 8.)  Plaintiff further alleges that, prior to Middleton and Smith's second visit to the school, Defendants agreed amongst themselves that Middleton and Smith would violate Plaintiff's constitutional rights by illegally detaining him, interrogating him, and intimidating him

1   into admitting responsibility for the assault and battery, instead of investigating the circumstances

2   of the alleged assault and battery by Ramos.  (*Id.* at 7.)  Plaintiff contends that, as a result of

3   Defendants' actions, he was charged with a crime and forced to obtain legal counsel and defend

4   himself.  (*Id.* at 8.)

5          Plaintiff further alleges that after reviewing the videotape and interviewing Plaintiff,

6   Ramos, and other witnesses, the school determined Plaintiff had merely attempted to defend

7   himself from two unprovoked attacks and had done nothing wrong.  (*Id.*)  The school

8   subsequently suspended Ramos for five days and declined to take any adverse actions against

9   Plaintiff.  (*Id.*)  Further, Plaintiff alleges the District Attorney's office ultimately declined to

10  prosecute Plaintiff and no criminal charges were filed.  (*Id.*)

11         Plaintiff initiated this action on September 15, 2017.  (ECF No. 1.)  Defendants filed a

12  motion to dismiss the original Complaint, but before the Court ruled on the motion, it granted the

13  parties' Stipulation permitting Plaintiff to file an amended complaint.  (*See* ECF Nos. 4, 11, 13.)

14  On February 8, 2018, Plaintiff filed his FAC, asserting claims pursuant to 42 U.S.C. § 1983 ("§

15  1983") for: (1) illegal detention and arrest in violation of the Fourth Amendment; (2) violations of

16  Plaintiff's Fourteenth Amendment due process rights; and (3) conspiracy.  (ECF No. 12 at 1, 8–

17  11.)  On March 16, 2018, Defendants filed a Motion to Dismiss the FAC.  (ECF No. 16.)

18  Plaintiff filed an opposition and Defendants replied.  (ECF Nos. 17, 18.)

19         **II.      STANDARD OF LAW**

20         A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure

21  ("Rule") 12(b)(6) tests the legal sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732

22  (9th Cir. 2001).  Rule 8(a) requires that a pleading contain "a short and plain statement of the

23  claim showing that the pleader is entitled to relief."  *See Ashcroft v. Iqbal (Iqbal)*, 556 U.S. 662,

24  678–79 (2009).  Under notice pleading in federal court, the complaint must "give the defendant

25  fair notice of what the claim . . . is and the grounds upon which it rests."  *Bell Atlantic v. Twombly*

26  *(Twombly)*, 550 U.S. 544, 555 (2007) (internal quotations omitted).  "This simplified notice

27  pleading standard relies on liberal discovery rules and summary judgment motions to define

28  / / /

1    disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*,

2    534 U.S. 506, 512 (2002).

3          On a motion to dismiss, the factual allegations of the complaint must be accepted as true.

4    *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court is bound to give a plaintiff the benefit of every

5    reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail*

6    *Clerks Int'l Ass'n v. Schermerhorn (Retail Clerks)*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff

7    need not allege "'specific facts' beyond those necessary to state his claim and the grounds

8    showing entitlement to relief." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when

9    the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

10   defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S.

11   at 556).

12         Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of

13   factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir.

14   1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than an

15   unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A

16   pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

17   elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678

18   ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

19   statements, do not suffice.").  Moreover, it is inappropriate to assume that the plaintiff "can prove

20   facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not

21   been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459

22   U.S. 519, 526 (1983).

23         Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough

24   facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting

25   *Twombly*, 550 U.S. at 570).  Only where a plaintiff has failed to "nudge[] [his or her] claims . . .

26   across the line from conceivable to plausible," is the complaint properly dismissed. *Id.* at 680.

27   While the plausibility requirement is not akin to a probability requirement, it demands more than

28   "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  This plausibility inquiry is

1    "a context-specific task that requires the reviewing court to draw on its judicial experience and

2    common sense." *Id.* at 679.

3         If a complaint fails to state a plausible claim, "[a] district court should grant leave to

4    amend even if no request to amend the pleading was made, unless it determines that the pleading

5    could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130

6    (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)); *see*

7    *also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in

8    denying leave to amend when amendment would be futile).  Although a district court should

9    freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to

10   deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint."

11   *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting

12   *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

13        **III.    ANALYSIS**

14        Defendants move to dismiss the FAC in its entirety.  First, Defendants argue that any

15   claim based on conduct occurring prior to September 15, 2015, is barred by the two-year statute

16   of limitations for personal injury, and that Plaintiff fails to state a claim against any Defendant in

17   his "official capacity" (*i.e.*, a *Monell* claim) because there are no allegations that any alleged

18   constitutional deprivation was caused by an existing, unconstitutional municipal policy.  (ECF

19   No. 16 at 4, 10–11.)  In addition, Defendants seek dismissal of Plaintiff's First Cause of Action

20   on the basis that the allegations demonstrate any detention was reasonable, there was probable

21   cause to arrest Plaintiff, and Defendants are entitled to qualified immunity.  (*Id.* at 4–10.)

22   Defendants argue Plaintiff's Second Cause of Action fails because there is no substantive due

23   process right to be free from prosecution without probable cause.  (*Id.* at 8.)  And Defendants

24   argue the Third Cause of Action fails because the FAC fails to set forth allegations sufficient to

25   state a claim for conspiracy.  (*Id.* at 8–9.)  The Court addresses each argument in turn.

26             A.    Statute of Limitations

27        Defendants assert the two-year statute of limitations for personal injury actions applies to

28   each of Plaintiff's § 1983 claims, to bar all claims based on Defendants' conduct occurring prior

6

1   to September 15, 2015.  (*Id.* at 4 (citing *McDougal v. County of Imperial*, 942 F.2d 668, 674 (9th

2   Cir. 1991); Cal. Code Civ. P. § 335.10).)  Specifically, this appears to apply to Plaintiff's

3   allegations relating to the fight and initial investigation occurring on September 12, 2015.  (*See*

4   *id.*)  Plaintiff concedes that all claims arising from actions prior to September 15, 2015, are

5   barred.  (ECF No. 17 at 4.)  Accordingly, Defendants' Motion to Dismiss based on their statute of

6   limitations argument is GRANTED.  To the extent Plaintiff raises claims based on conduct

7   arising from the fight or initial investigation occurring on September 12, 2015, such claims are

8   DISMISSED without leave to amend.

9                        B.      Official Capacity Allegations

10         Suing a public employee in his official capacity under § 1983 is equivalent to suing the

11   entity itself.  *Kentucky v. Graham*, 4733 U.S. 159, 165-66 (1985).  To prevail on a § 1983 claim

12   against a municipality, Plaintiff must allege facts supporting a contention that "the action that is

13   alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation,

14   or decision officially adopted by that body's officers."  *Monell v. Dep't of Soc. Servs.*, 436 U.S.

15   658, 691 (1978).  Simply put, Plaintiff must establish "the local government had a deliberate

16   policy, custom, or practice that was the 'moving force' behind the constitutional violation [he]

17   suffered."  *Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007) (citing *Monell*, 436 U.S. at

18   694).

19         Here, Defendants argue Plaintiff has failed to allege any constitutional deprivation caused

20   by an existing unconstitutional municipal policy.  (ECF No. 16 at 11.)  The Court agrees.

21   Plaintiff indicates he is suing each Defendant in his individual and official capacity.  (*See* ECF

22   No. 12 at 3.)  Yet the FAC is devoid of references to any policy, custom, or practice, and instead

23   merely alleges facts pertaining to the individual Defendants' actions.  (*See id.* at 7–8); *Whitaker*,

24   486 F.3d at 581; *Monell*, 436 U.S. at 694.  Further, Plaintiff fails to address this argument in his

25   Opposition and thus presumably concedes this point.  (*See generally* ECF No. 17.)  Accordingly,

26   to the extent Defendants seek dismissal of any claims asserted against them in their official

27   capacity, Defendants' Motion is GRANTED without leave to amend.

28   / / /

1

2

   C.   Unlawful Detention and Arrest in Violation of the Fourth Amendment

   (First Cause of Action)

3    Plaintiff alleges he was wrongfully detained and arrested on September 21, 2015, in

4    violation of his Fourth Amendment Rights.  (ECF No. 12 at 7, 9.)  Defendants maintain that any

5    detention was reasonable pursuant to the standards set forth under *New Jersey v. T.L.O.*, 469 U.S.

6    325 (1985).[1]  (ECF No. 16 at 4–5 (citing 469 U.S. at 341–42).)  They further contend the arrest

7    was properly supported by probable cause.  (*Id.* at 6–7.)  Alternatively, Defendants argue Plaintiff

8    fails to allege sufficient facts to state a claim for wrongful arrest under § 1983 because he does

9    not specify which Defendant took the purported adverse action against him.  (*Id.* at 8.)  The Court

10   addresses each argument in turn.

11   The Fourth Amendment provides that "the right of the people to be secure in their

12   persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be

13   violated . . ."  *United States v. Mendenhall*, 446 U.S. 544, 550 (1980).  The central inquiry under

14   the Fourth Amendment is whether a search or seizure is reasonable under all the circumstances of

15   a particular governmental invasion of a person's personal security.  *See Terry v. Ohio*, 392 U.S. 1,

16   19 (1968).  To be reasonable under the Fourth Amendment, a search or seizure ordinarily must be

17   based on individualized suspicion of wrongdoing.  *See Chandler v. Miller*, 520 U.S. 305, 313

18   (citing *Vernonia Sch. Dist. 47J v. Acton (Vernonia)*, 515 U.S. 646, 652–53 (1995)).  Indeed,

19

20

21

22

23

24

25

26

27

28

---

[1]    Defendants assert the reasonableness standard articulated in *T.L.O.* applies to seizures by law enforcement of a school student.  (ECF No. 16 at 5.)  This is an incorrect statement of law.  Rather, the reasonableness standard articulated in *T.L.O.* applies to searches and seizures conducted by *school officials*.  *See T.L.O.*, 469 U.S. at 340–41, n.7; *see also C.B. v. City of Sonora*, 769 F.3d 1005, 1023–24 (9th Cir. 2014) (expressly declining to hold whether the *T.L.O.* standard or traditional Fourth Amendment rules apply to law enforcement searches and seizures in school settings); *cf. Scott v. Cnty. of San Bernardino*, 903 F.3d 943 (9th Cir. 2018) (applying *T.L.O.* test to arrests made on campus by law enforcement in response to school, parents, and fellow officer's request to address ongoing bullying incidents); *In re D.E.M.*, 727 A.2d 570, 573–74 (PA Sup. 1999) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 487 (1971)) (school officials may be deemed to have acted as "agents of the police" where totality of the circumstances indicates the police coerced, dominated, or directed the actions of the school officials).  Nevertheless, Plaintiff does not argue a different test be applied and is deemed to have waived that argument for purposes of Defendants' motion.  Regardless, the Court finds the detention was unreasonable, even under the less-restrictive test set forth under *T.L.O.*, for the reasons discussed herein.

where a search or seizure is undertaken by law enforcement officials to discover evidence of criminal wrongdoing, reasonableness generally requires the obtaining of a judicial warrant and/or probable cause. *Vernonia*, 515 U.S. at 653. Nevertheless, there exist certain exceptions based on "special needs, beyond the normal need for law enforcement," under which the Court "must undertake a context-specific inquiry, examining closely the competing private and public interests advanced by the parties." *Chandler*, 520 U.S. at 313–14.

The Supreme Court has found such "special needs" to exist in the public school context, such that students have a "lesser expectation of privacy than members of the population generally." *Vernonia*, 515 U.S. at 653; *see also Scott*, 903 F.3d at 950. This is because "the preservation of order and a proper educational environment requires close supervision of schoolchildren, as well as the enforcement of rules against conduct that would be perfectly permissible if undertaken by an adult." *T.L.O.*, 469 U.S. at 334–41; *Vernonia*, 515 U.S. at 656–57 (finding "special need" is derived from the informal nature of the student-teacher relationship); *see also In re Randy G.*, 26 Cal. 4th 556, 563–65 (2001). Indeed, the supreme court found teachers and administrators, who lack the legal sophistication and training on the "niceties of probable cause" that is required of law enforcement officers, have a substantial need for flexibility in school disciplinary procedures in order to take the "immediate, effective action" sometimes required to maintain order in the school and a suitable learning environment for the students. *T.L.O.*, 469 U.S. at 339–43. Thus, taking into account schools' "custodial and tutelary responsibility for children," a search or seizure conducted by a school official need not comply with the regular warrant and probable cause requirement but need only be reasonable under the circumstances. *Id.* at 341; *see also Scott*, 903 F.3d at 949 (extending special needs test that *T.L.O.* applied to searches to equally apply to seizures in school setting). Instead, the Court must consider (1) whether the action was justified at its inception, and (2) whether the search or seizure was "reasonably related in scope to the circumstances which justified the interference in the first place." *T.L.O.*, 469 U.S. at 341 (citing *Terry*, 392 U.S. at 20). "Under ordinary circumstances, a search [or seizure] of a student by a teacher or other school official will be 'justified at its inception' when there are reasonable grounds for suspecting that the search will turn up evidence

1    that the student has violated or is violating either the law or the rules of the school."  *Id.* at 341–

2    42.  The search or seizure is "permissible in scope" when the measures adopted are reasonably

3    related to the objectives of the search/seizure and not excessively intrusive in light of the age and

4    sex of the student and the nature of the infraction.  *Id.*

5                                   *i.  Detention*

6                              *a)  Whether a Detention Occurred*

7            As an initial matter, the Court addresses Defendants' contention that there was no

8    detention.  A "detention," or seizure, occurs when there is a restraint on liberty to a degree that a

9    reasonable person would not feel free to leave.  *Doe v. Haw. Dep't of Educ.*, 334 F.3d 906, 909

10   (9th Cir. 2003); *see also Terry*, 392 U.S. at 16, 19 n.16 ("It must be recognized that whenever a

11   police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that

12   person.").

13           Here, Plaintiff was "pulled from class" on September 21, 2015, to be re-interviewed by

14   Middleton and Smith about the September 12 altercation.  (ECF No. 12 at 7.)  It is well

15   established that minor students are not free to come and go at will in the school setting, but are

16   subject to the custodial and tutelary supervision and control exercised by school officials.  *See*

17   *Vernonia*, 515 U.S. at 655–56.  Thus, construing all reasonable inferences in Plaintiff's favor,

18   Plaintiff did not have the option to refuse the direction of school authorities or leave the interview

19   while Middleton and Smith questioned him.  As such, he was detained.  *Doe*, 334 F.3d at 909.

20           Defendants contend their actions did not amount to a detention, however they offer no

21   further argument or legal authority in support of this contention.[2]  Defendants also contend

22   Plaintiff fails to sufficiently describe the "manner of detention," and his allegations are too vague

23   to establish a detention.  (ECF No. 18 at 3.)  The Court finds these contentions equally unavailing.

24   / / /

25   _____

26   [2]      Defendants appear to argue the September 21 interview does not constitute a detention
     because Plaintiff's father indirectly consented to it.  However, consent does not negate the
27   occurrence of the detention itself.  *See Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973).
     Accordingly, the Court addresses Defendants' consent argument with respect to its evaluation of
28   the reasonableness of the detention.

                                         10

1   *See Twombly*, 550 U.S. at 570 (rejecting heightened pleading standard).  Accordingly, the Court

2   finds Plaintiff was detained.

3                                        *b)  Reasonableness of the Detention*

4           Having concluded Plaintiff was detained, the Court next evaluates the reasonableness of

5   the detention.  As the Court previously noted, to be deemed reasonable under the Fourth

6   Amendment a detention must be both justified at its inception and "reasonably related in scope to

7   the circumstances which justified the interference in the first place."  *T.L.O.*, 469 U.S. at 341

8   (citing *Terry*, 392 U.S. at 20).  Defendants argue that any detention was justified at its inception

9   because (1) Mr. Dickerson consented to Plaintiff being questioned again when he requested

10  further investigation, (2) Plaintiff implicitly expressed dissatisfaction with the first investigation,

11  thus inviting further investigation, and (3) Plaintiff admitted to his involvement in the altercation.

12  (ECF No. 16 at 4–5.)  Further, Defendants argue that interviewing Plaintiff again was reasonably

13  related to their continued investigation of "the claim that Plaintiff was either the victim or

14  perpetrator of the interaction with Ramos." (*Id.*)  The Court finds Defendants' arguments

15  unpersuasive.

16          Whether consent was voluntarily given is "to be determined from the totality of all the

17  circumstances."  *Schneckloth*, 412 U.S. at 222.  It is the government's burden to demonstrate that

18  consent was voluntary.  *United States v. Papaya Soriano*, 361 F.3d 494, 501 (9th Cir. 2002).

19  Here, Defendants' consent argument misconstrues the FAC and takes Plaintiff's allegations out of

20  context.  Nowhere in the FAC does Plaintiff allege his father asked Defendants to interview

21  Plaintiff again as part of their further investigation, nor is there any mention of being asked for

22  and giving Defendants "consent" to detain and re-interview Plaintiff.  (*See* ECF No. 12.)

23          Additionally, Mr. Dickerson (and thereby Plaintiff, "implicitly") did not request further

24  investigation to determine whether "Plaintiff was either the victim or perpetrator of the interaction

25  with Ramos," as Defendants contend.  (*See* ECF No. 16 at 4–5.)  Rather, a fair reading of the

26  FAC indicates Mr. Dickerson contacted Samson, as Middleton's superior, to lodge a complaint

27  against Middleton for the hostile manner in which Middleton questioned Plaintiff and the

28  perceived inadequacy of Middleton's findings against Ramos in light of the video and

1   photographic evidence that supported Plaintiff's version of events.  Specifically, Mr. Dickerson

2   took issue with Middleton's accusation that Plaintiff was lying, his refusal to acknowledge

3   Plaintiff sustained any injury, his attempt to intimidate Plaintiff into admitting fault and

4   abandoning the pursuit of further legal recourse against Ramos, and his insistence that Plaintiff

5   incited the attack.  (*See* ECF No. 12 at 5–7.)  Thus, it may reasonably be inferred that Mr.

6   Dickerson requested Defendants conduct further investigation at the high school with respect to

7   the evidence that purportedly supported Middleton's determination that Ramos should be cited

8   merely for a misdemeanor battery, as opposed to a more serious charge.  (*See id.*)  This

9   information would not come from Plaintiff who, contrary to Defendants' contention, repeatedly

10   asserted that he did nothing to provoke Ramos's attack (*see id.* at 6), but likely from Ramos

11   himself, other witnesses, and the school's video-recorded footage of the incident.

12          In sum, construing the allegations in the most favorable light to Plaintiff, the Court cannot

13   conclude from the pleadings that Mr. Dickerson voluntarily gave consent for the deputies

14   specifically to detain and re-examine his son.  Nor can the Court conclude that, through Mr.

15   Dickerson's conversation with Samson, Plaintiff also "implicitly" invited further investigation

16   against himself.

17          To the contrary, Plaintiff argues Defendants' conduct was not justified at its inception

18   since the deputies only returned to the high school to violate his constitutional rights by illegally

19   detaining him and interrogating him in a threatening and intimidating manner.  (ECF No. 12 at 7;

20   ECF No. 17 at 5.)  More specifically, Plaintiff alleges Defendants' underlying purpose in

21   interviewing him a second time was to coerce Plaintiff into admitting responsibility for the attack,

22   and to thereafter charge him with a crime.  (ECF No. 12 at 7.)  Moreover, Plaintiff's allegations

23   suggest that Defendants decided to conduct this "further investigation" out of retaliation for

24   Plaintiff's continued attempt to pursue legal action against Ramos, even after Middleton and

25   Smith told Plaintiff that Ramos was the son of one of their colleagues, indicated they had no

26   desire to pursue any action against Ramos, and essentially warned Plaintiff not to pursue the

27   matter further.  (*See id.* at 5–6.)  Aside from these alleged improper motives, the FAC does not

28   reveal any objective basis for a second interview of Plaintiff or other "further investigation" into

1   "the claim that Plaintiff was either the victim or perpetrator." (*See* ECF No. 16 at 5.)  To the

2   contrary, the school had conducted its own investigation, concluded that Plaintiff was the victim

3   of Ramos's unprovoked attack, suspended Ramos from school, and declined to take any adverse

4   action against Plaintiff.  (ECF No. 12 at 8.)  The school appears to have based its decision on the

5   same evidence that was made available to the deputies: testimony of the witnesses and video

6   footage of the incident that portrayed an entirely one-sided attack in which Ramos overtook

7   Plaintiff from behind and beat him while he lay on the ground.  (*See id.* at 5–7.)

8          Notably, after interviewing Plaintiff the first time, Middleton and Smith did not cite or

9   arrest Plaintiff, but instead only cited Ramos.  (*See id.* at 6–7.)  This action suggests that the

10   deputies, too, believed at that time that the evidence was only sufficient to support a criminal

11   charge against Ramos and not Plaintiff.  Other than Mr. Dickerson's call to Samson — which this

12   Court has determined did not establish a legitimate basis for interviewing Plaintiff a second time

13   — the FAC is devoid of allegations showing any new evidence was uncovered which would

14   compel a reversal of this position or require further investigation.  Therefore, the Court concludes

15   the detention was not justified at its inception.  For these same reasons, Defendants' argument

16   that the September 21 interview of Plaintiff was reasonably related to Defendants' continued

17   investigation of the attack also fails.  *T.L.O.*, 469 U.S. at 341 (citing *Terry*, 392 U.S. at 20).

18   Accordingly, the Court DENIES Defendants' Motion to Dismiss Plaintiff's First Cause of Action

19   with respect to the claim of unlawful detention.

20                              *ii.   Arrest*

21          Under California law, a citation constitutes an "arrest" for which an officer must have

22   probable cause.  *See Easyriders Freedom F.I.G.H.T. v. Hannigan (Easyriders)*, 92 F.3d 1486,

23   1498 (9th Cir. 1996) (probable cause required to cite a motorcyclist for violating helmet law).  To

24   prevail on a § 1983 claim for false arrest, Plaintiff must demonstrate that there was no probable

25   cause to arrest him.  *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998).

26          Probable cause exists when a law enforcement officer possesses trustworthy information

27   "sufficient to warrant a prudent person in believing that the accused has committed an offense."

28   *Easyriders*, 92 F.3d at 1498.  This is an objective standard and the officer's subjective intention in

1   exercising his discretion to arrest is immaterial in judging whether his actions were reasonable for

2   Fourth Amendment purposes.  *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007).

3   Nevertheless, "'[m]ere suspicion . . . or even strong reason to suspect are not enough' to establish

4   probable cause."  *Rodis v. City and Cnty. of San Francisco*, 499 F.3d 1094, 1101 (9th Cir. 2007)

5   (quoting *Easyriders*, 92 F.3d at 1498).  Rather, to determine whether probable cause exists, the

6   Ninth Circuit evaluates the totality of the circumstances known to the arresting officer at the time

7   of making the arrest.  *John v. City of El Monte*, 515 F. 3d 936, 940 (9th Cir. 2007).  Where

8   officers have allegedly included false information to support their assertion of probable cause, a

9   court may nevertheless uphold a finding of probable cause if the remaining information is

10  sufficient to support such a finding.  *See Spencer v. Peters*, 857 F.3d 789, 802 (9th Cir. 2017)

11  (citing *Hervey v. Estes*, 65 F.3d 784, 789 (9th Cir. 1995)) (discussing use of false information in a

12  warrant affidavit and conducting Fourth Amendment probable cause analysis based only on

13  evidence not purportedly fabricated).  Finally, "[p]robable cause is generally a question for the

14  jury," unless "no reasonable jury could determine that there was a lack of probable cause."  *See*

15  *Barry v. Fowler*, 902 F.2d 770, 772–73 (9th Cir. 1990).

16          Defendants contend the following allegations establish probable cause that Plaintiff

17  committed an assault or battery sufficient to effect the arrest: (1) Plaintiff was in an argument

18  before the fight; (2) he agreed to fight by saying "hella," meaning "whatever" (or "sure"

19  according to the original Complaint); (3) Middleton uncovered evidence that Plaintiff had been

20  "chipping away" at Ramos prior to the attack; and (4) Plaintiff said "I'm going to kick your ass,"

21  or words to that effect.[3]  (ECF No. 16 at 7.)  The Opposition disputes Defendants'

22  characterization of the allegations and reiterates that Plaintiff was attacked with no warning and

23

---

24  [3]      Confusingly, Defendants initially suggest Plaintiff was issued a citation for inciting a
   fight, but at another point in their motion, they comment that the FAC does not identify the
25  specific charge for which Plaintiff was cited.  Ultimately, Defendants assert an argument that the
   deputies had probable cause to believe Plaintiff had committed an assault or battery on Ramos.
26  (*See* ECF No. 16 at 6–7.)  The Court addresses Defendants' probable cause argument relating to
   assault and battery herein.  To the extent Defendants suggest there was sufficient probable cause
27  to issue Plaintiff a citation for inciting a fight, the Court rejects Defendants' argument because it
   is premised on a mischaracterization of the facts alleged, which the Court also discusses herein.
28

1  that he neither touched nor threatened to touch Ramos at any time.  (ECF No. 17 at 5–6.)  The

2  Court finds Plaintiff's argument persuasive for the reasons that follow.

3  *a)  Defendants' Characterization of the Allegations*

4  The Court finds Plaintiff has sufficiently alleged Defendants relied heavily upon

5  fabricated evidence to justify arresting him on September 21.  With respect to Defendants'

6  contention that Middleton "uncovered evidence that Plaintiff had been 'chipping away' at Ramos

7  prior to the attack" and that Plaintiff said, "I'm going to kick your ass" (ECF No. 16 at 7), the

8  Court finds Defendants take Plaintiff's allegations entirely out of context.  First, there is no

9  indication in the FAC that the deputies uncovered any new evidence between the first and second

10  time they interviewed Plaintiff.  Further, these allegations, when properly viewed within the

11  context of the FAC, are merely examples Plaintiff references in support of his claim that

12  Defendants fabricated information against him in order to shield Ramos from criminal

13  prosecution and to retaliate against Plaintiff for attempting to press charges against Ramos for the

14  attack.  For example, during the initial interview on September 12, in the face of Plaintiff's

15  assertion that Ramos attacked him from behind with no justification, Middleton yelled at Plaintiff,

16  accused him of lying, and made comments such as: "you hit him, didn't you?"; "what did you do

17  today to make him snap?"; and "that's not it, that's not it!".  (ECF No. 12 at 6.)  Immediately

18  after that interview, Middleton told Mr. Dickerson in a phone conversation that — despite the

19  deputies' decision to cite Ramos but not Plaintiff that day — Plaintiff was at fault for the attack

20  because he had been "'chipping' away at Ramos prior to the attack."  (*Id.*)  Yet when Mr.

21  Dickerson pressed him for the evidentiary support for this accusation, Middleton could not justify

22  his comment and fell "silent."  (*Id.*)  When viewed in context, the Court simply cannot conclude

23  the "chipping away" allegation supports Defendants' probable cause analysis.

24  Similarly, the "I'm going to kick your ass" comment falls within the context of Plaintiff

25  illustrating Defendants' attempt to conspire against him and fabricate evidence.  On September

26  21, after the deputies cited Plaintiff, Mr. Dickerson sought an explanation from Samson.  (ECF

27  No. 12 at 8.)  At that time, Samson told Mr. Dickerson that, after the initial assault by Ramos,

28  Plaintiff told Ramos, "'I'm going to kick your ass' or words to that effect, which constituted

incitement." (*Id.*)  Immediately after describing this purported communication between Samson and his father, Plaintiff re-asserts that he "told Ramos he didn't want to fight" and that Samson's statement to Mr. Dickerson "was a complete fabrication by the deputies." (*Id.*)  Based on the totality of these facts, as alleged, it appears to this Court that the "kick your ass" comment also cannot earnestly be construed to support Defendants' argument.  *Spencer*, 857 F.3d at 802.

*b) Information Objectively Available to the Deputies at the Time of the Arrest*

Rather, viewing the facts and reasonable inferences in the light most favorable to Plaintiff, as the Court must on a challenge to the pleadings, Plaintiff alleges Defendants possessed only the following information about the September 12 incident at the time they cited Plaintiff on September 21: (1) on September 12, Ramos and Plaintiff had an argument in class; (2) Ramos pushed Plaintiff and challenged him to a fight, and Plaintiff responded "hella," but no fight occurred at that time; (3) video footage taken later that day shows Ramos twice knocking Plaintiff to the ground from behind and stomping on and kicking Plaintiff while he lay on the ground, but Plaintiff did not strike Ramos; (4) Plaintiff provided a witness statement that he didn't provoke Ramos, didn't want to fight Ramos, and had warned Ramos after the first attack that if he struck Plaintiff again, Plaintiff would have him arrested; (5) the school called the police station because Plaintiff wanted Ramos to be arrested for battery; (6) the deputies cited Ramos but not Plaintiff for misdemeanor battery at the conclusion of their investigation on September 12; and (7) Mr. Dickerson provided a photo to Samson on September 12 which was consistent with Plaintiff's version of events.  (ECF No. 12 at 5–7.)  In addition, Plaintiff alleges that the school, after conducting an independent investigation based on the same information, determined Plaintiff was the victim, not aggressor, of Ramos's unprovoked attack and suspended Ramos from school for five days while taking no adverse action against Plaintiff.  (*Id.* at 8.)  It is unclear from the FAC whether Middleton and Smith were aware of the school's decision before they detained and interviewed Plaintiff for a second time on September 21.  Nevertheless, even assuming the school's disciplinary action against Ramos was unknown to the deputies at the time of the citation, the Court concludes the information that was available to the deputies on September 21

1    does not support any reasonable belief that Plaintiff had committed an assault or battery on

2    Ramos on September 12.  Indeed, Defendants' argument that they "could have reasonably

3    believed that Plaintiff and Ramos had each committed an assault and/or battery against the other"

4    (ECF No. 16 at 7), appears laughably disingenuous in the face of the school's video footage of

5    Ramos's entirely one-sided attack, and the fact that the deputies previously declined to arrest or

6    cite Plaintiff on the date of the incident, based on the same information that was available to them

7    on September 21.  Therefore, the Court concludes that the facts alleged do not support a finding

8    of probable cause.  Accordingly, Plaintiff has sufficiently alleged a claim for wrongful arrest.

9                   *c)   Failure to State a Claim Pursuant to § 1983*

10          Finally, the Court rejects Defendants' supplemental argument that Plaintiff fails to assert a

11   wrongful arrest claim under § 1983 because he fails to identify which Defendant cited him.  (*Id.*

12   at 8 (citing *Monell*, 436 U.S. at 658).)  The FAC alleges Middleton and Smith went to the school

13   on September 21 and that both deputies arrested him.  (*See* ECF No. 12 at 7–8.)  Based on these

14   allegations, it is irrelevant which of the two Defendants technically arrested Plaintiff because both

15   were present at the arrest and a failure to stop an unlawful arrest subjects an officer to § 1983

16   liability.  *See Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (a person "causes" the

17   deprivation of a federal right under § 1983 if he "does an affirmative act, participates in another's

18   affirmative acts or omits to perform an act which he is legally required to do that causes the

19   deprivation of which complaint is made."); *Cunningham v. Gates*, 229 F.3d 1271, 1289–90 (9th

20   Cir. 2000) (officers have a duty to intervene when fellow officers violate the constitutional rights

21   of a suspect or other citizen and may be held liable for failing to intercede if they had an

22   opportunity to do so.  Moreover, as Plaintiff notes in his Opposition, the FAC alleges all three

23   Defendants met prior to September 21 and conspired to use fabricated evidence to wrongfully

24   detain, interrogate, and arrest him.[4]  (*See* ECF No. 17 at 5; ECF No. 12 at 7.)  Therefore, Plaintiff

---

25   [4]      The Court acknowledges Plaintiff specifically identifies Middleton as the officer who
     issued the citation against him in his Opposition.  (ECF No. 17 at 5.)  However, this allegation
26   does not appear in the FAC, and Plaintiff may not supplement his FAC with factual allegations
     raised for the first time in an opposition.  *Broam v. Bogan*, 320 F.3d 1023, 1026 (9th Cir. 2003)
27   (holding "a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a
     memorandum in opposition to a defendant's motion to dismiss," but noting such allegations may
28   be considered to determine whether granting leave to amend is appropriate).

1    has properly asserted his wrongful detention and arrest claim against all three Defendants under §

2    1983.

3              *iii.   Qualified Immunity*

4              Alternatively, Defendants argue they are entitled to qualified immunity since they did not

5    violate any clearly established statutory or constitutional rights of Plaintiff.  (ECF No. 16 at 9–

6    10.)  The doctrine of qualified immunity protects officials from civil liability if their conduct

7    "does not violate clearly established statutory or constitutional rights of which a reasonable

8    person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v.*

9    *Fitzgerald*, 457 U.S. 800, 818 (1982)).  Having found that the allegations as pleaded establish

10   Defendants' conduct violated Plaintiff's constitutional right to be free from unlawful detention

11   and arrest, the Court considers whether those rights were clearly established at the time of the

12   violation.  *Id.* at 232; *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001).

13             To be clearly established, "[t]he contours of the right must be sufficiently clear that a

14   reasonable official would understand that what [the official] is doing violates that right."

15   *Mendoza v. Block*, 27 F.3d 1357, 1361 (9th Cir. 1994) (quoting *Anderson v. Creighton*, 483 U.S.

16   635, 640 (1987)).  "The dispositive question is whether the violative nature of *particular* conduct

17   is clearly established."  *Isayeva v. Sacramento Sheriff's Dept.*, 872 F.3d 938, 947 (9th Cir. 2017).

18   Usually, a "body of relevant case law" is needed to clearly establish that a defendant-officer acted

19   under similar circumstances as an officer who was found to have violated the Fourth Amendment.

20   *City of Escondido v. Emmons*, 139 S. Ct. 500, 504 (2019).  However, where an officer's conduct

21   "is so patently violative of the constitutional right that reasonable officials would know without

22   guidance from the courts that the action was unconstitutional, closely analogous pre-existing case

23   law is not required to show that the law is clearly established."  *Boyd v. Benton County*, 374 F.3d

24   773, 781 (9th Cir. 2004) (quoting *Deorle v. Rutherford*, 272 F.3d 1272, 1286 (9th Cir. 2001);

25   *Mendoza*, 27 F.3d at 1361) (internal quotations omitted).  The plaintiff bears the burden of

26   demonstrating that the right at issue was clearly established.  *See Alston v. Read*, 663 F.3d 1094,

27   1098 (9th Cir. 2011).

28             Here, Defendants argue their conduct was reasonable based on the existence of several

1   cases justifying arrests for battery where, as here, the circumstances reflect mutual combat or self-

2   defense was used.  (*Id.* at 10 (citing *Sudderth v. City and Cnty. of San Francisco*, No. 00-2337

3   MMC, 2001 WL 764929, at *5–6 (N.D. Cal. Jun. 27, 2001); *Verdugo v. Manker*, No. EDCV 06-

4   00989-VBF (MAN), 2009 U.S. Dist. LEXIS 133891, at *14–15 (C.D. Cal. Apr. 6, 2009)).)

5   Plaintiff rejects the premise of Defendants' argument and instead opposes qualified immunity on

6   the grounds that Defendants' conduct falls into the "patently violative" category of clearly

7   established rights.  (ECF No. 17 at 7 (citing *Mendoza*, 27 F.3d at 1361).)  Again, the Court finds

8   Plaintiff has the better argument.

9          As previously discussed, the Court finds Plaintiff has sufficiently alleged Defendants

10   relied heavily upon fabricated evidence to justify detaining — and ultimately arresting — him on

11   September 21.  Thus, Defendants' reliance on the aforementioned battery cases is misplaced

12   because those cases are factually distinct from the instant matter.  In short, Defendants' cases

13   provide that an officer may reasonably arrest both participants of an altercation where it is

14   undisputed that the parties traded blows.[5]  Whereas here, by contrast, Plaintiff alleges he was the

15   victim of an unprovoked attack and did not, at any time, strike Ramos.

16          Accepting Plaintiff's allegations as true for purposes of evaluating Defendants' motion,

17   the Court finds that intentionally fabricating evidence in order to justify detaining and charging

18   the victim of an attack with battery, as well as interviewing him in "a threatening and intimidating

19   matter" in order to coerce him into admitting responsibility for the attack (*see* ECF No. 12 at 7),

20   "is so patently violative of [a plaintiff's constitutional rights] that reasonable officials would

21   know without guidance from the courts that the action was unconstitutional."  *Boyd*, 374 F.3d at

22   781; *Mendoza*, 27 F.3d at 1361.  Moreover, the Court notes a "body of relevant case law" does

23

24   [5]     *See Sudderth*, 2001 WL 764929 (on summary judgment, the undisputed facts indicated the
     plaintiff admitted to using force against the other person but claimed it was in self-defense);
25   *Verdugo*, 2009 U.S. Dist. LEXIS 133891, at *14–15 (citing *Sudderth* for the same proposition,
     where the plaintiff admitted to using force against the other party and acknowledged a factual
26   dispute as to which person instigated the fight).  Neither case involves a claim that the police
     fabricated evidence in order to satisfy probable cause.  The Court additionally notes that in both
27   cases, unlike the instant matter, both parties to the altercation were arrested and/or issued citations
     immediately following the incident, and not during a subsequent investigation.  *See id.*
28

19

1    exist with respect to officers fabricating evidence and using coercive tactics during interviews,

2    which supports Plaintiff's allegations that his clearly established rights were violated.  *See*

3    *Devereaux v. Abbey*, 263 F.3d 1070, 1074–75 (9th Cir. 2001) ("[T]he wrongfulness of charging

4    someone on the basis of deliberately fabricated evidence is sufficiently obvious . . . that the right

5    to be free from such charges is a constitutional right."); *Pyle v. Kansas*, 317 U.S. 213, 216 (1942)

6    (knowing use of perjured testimony by the prosecution in order to secure a criminal conviction

7    violates the U.S. Constitution); *Hervey*, 65 F.3d at 789 (indicating it is "objectively unreasonable

8    for a law enforcement officer to deliberately or recklessly misstate facts material to the probable

9    cause determination."); *see also* Cal. Civ. Code § 52.1 (California's Bane Act, authorizing

10   individual civil actions for damages and injunctive relief by individuals whose federal or state

11   rights have been interfered with by threats, intimidation, or coercion).  Therefore, the Court finds

12   that Defendants are not entitled to qualified immunity.

13         For the foregoing reasons, the Court DENIES Defendants' Motion to Dismiss Plaintiff's

14   First Cause of Action.

15              D.      Violation of Fourteenth Amendment Due Process Rights (Second Cause of

16                      Action)

17         Defendants seek dismissal of Plaintiff's due process claim on the basis that Plaintiff has

18   failed to allege any right that was infringed upon without due process.  (ECF No. 16 at 8.)

19   Plaintiff does not address this argument in any fashion in his Opposition and therefore concedes

20   this point.  Accordingly, the Court GRANTS Defendants' Motion to Dismiss Plaintiff's Second

21   Cause of Action without leave to amend.

22              E.      Conspiracy (Third Cause of Action)

23         To state a claim for conspiracy pursuant to 42 U.S.C. § 1983, Plaintiff must allege an

24   agreement or a meeting of the minds to violate his constitutional rights.  *Woodrum v. Woodward*

25   *County*, 866 F. 2d 1121, 1126 (9th Cir. 1989); *Fonda v. Gray*, 707 F.2.d 435, 438 (9th Cir. 1983).

26   Further, the alleged conspiracy must result in an actual deprivation of a constitutional right.

27   *Woodrum*, 866 F.2d at 1126.  Allegations of conspiracy must be supported by material facts as

28   opposed to conclusory allegations.  *Id.*  Nevertheless, "[a] defendant's knowledge of and

1    participation in a conspiracy may be inferred from circumstantial evidence and from evidence of

2    the defendant's actions." *Gilbrook v. City of Westminster*, 177 F.3d 839, 856–57 (9th Cir. 1999).

3    In fact, because direct evidence of an agreement to violate a plaintiff's rights rarely exists, "it will

4    almost always be necessary to infer such agreements from circumstantial evidence or the

5    existence of a joint action." *Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1302 (9th

6    Cir. 1999).  For this reason, the issue of whether the defendants were involved in an unlawful

7    conspiracy is generally a factual issue that must be resolved by the jury. *Id.* at 1301; *see also*

8    *Pelenty v. City of Seal Beach*, 588 Fed. App'x 623 (9th Cir. 2014) (reversing summary judgment

9    where circumstantial evidence supported inference of conspiracy).

10          Defendants argue Plaintiff's § 1983 conspiracy claim necessarily fails because probable

11   cause existed to detain and arrest him.  (ECF No. 16 at 8–9.)  Alternatively, Defendants argue

12   Plaintiff's claim fails because: (1) Middleton had already arrived at the conclusion that there was

13   probable cause to believe Plaintiff instigated the fight before the alleged conspiracy arose; and (2)

14   Plaintiff's allegations relating to Defendants' retaliatory motive are too general and vague to

15   establish the requisite meeting of the minds, and therefore Plaintiff fails to allege sufficient facts

16   to state a claim.  (*Id.* at 9; *see also* ECF No. 18 at 4.)

17          However, having already determined Plaintiff alleged sufficient facts to state a Fourth

18   Amendment claim for wrongful arrest based on a lack of probable cause, the Court rejects

19   Defendants' first argument.  Similarly, the Court has already rejected Defendants' argument that

20   they "reasonably believed probable cause existed," instead finding that Defendants had

21   mischaracterized the allegations and taken them out of context in order to support their argument.

22   Therefore, Defendants' contention that the allegations suggest Middleton had probable cause to

23   believe Plaintiff instigated the fight before the alleged conspiracy arose is also unpersuasive.

24          The Court also rejects Defendants' contention that Plaintiffs' allegations relating to

25   retaliatory motive are too general and vague.  In short, Plaintiff alleges that during every

26   interaction with Plaintiff or his parents, Middleton declared his aversion to pursuing any criminal

27   action against Ramos because Ramos's father was a fellow law enforcement officer whom

28   Defendants considered "one of us."  (*Id.* at 5–6.)  Indeed, Middleton expressly told Plaintiff and

                                                        21

his mother during the September 12 interview "we would not even be here if plaintiff wasn't demanding prosecution [of Ramos for battery]." (*id.* at 6.)  However, instead of dropping the complaint, Plaintiff persisted in his demand that Ramos be arrested for battery.  Moreover, Mr. Dickerson called Samson to complain about Middleton's conduct during the September 12 interview and to challenge Middleton's purported findings in support of citing Ramos for only a misdemeanor.  Following the lodging of this complaint against Middleton, the FAC does not allege any new evidence was discovered between September 12 and 21 that would support a different conclusion from the one the deputies reached on September 12 when they decided not to cite or arrest Plaintiff.  Nor does the FAC indicate Middleton and Smith interviewed anyone other than Plaintiff on September 21 or obtained any new information during their investigation at the school that day.  Yet, on September 21, Dickerson and Smith detained and arrested Plaintiff for his involvement in the September 12 incident.  The Court finds retaliatory intent may reasonably be inferred from the whole of these factual allegations.

Finally, the Court rejects Defendants' argument that the allegations are too vague and conclusory to state a claim.  Plaintiff does not merely assert the conclusory allegation that Defendants agreed to violate his constitutional rights.  Rather, Plaintiff alleges that, after Mr. Dickerson called Samson to lodge his complaint, the three Defendants met and agreed that Middleton and Smith would return to the high school.  (ECF No. 12 at 6–7.)  Plaintiff further alleges Defendants also agreed Middleton and Smith would purport to "further investigate the circumstances surrounding the assault and battery on Plaintiff," but in fact they intended to intimidate Plaintiff during the second interview and coerce him into admitting or accepting responsibility for the assault and battery so that Defendants could then cite and arrest Plaintiff. (*Id.* at 7.)  And, after Defendants met and reached this agreement, Middleton and Smith returned to the high school and cited and arrested Plaintiff, despite the lack of probable cause to do so. (*Id.*)  In sum, the Court finds these allegations, as pleaded, sufficiently establish a meeting of the minds to support Plaintiff's conspiracy claim.  *Woodrum*, 866 F.2d at 1126; *Pelenty*, 588 Fed. App'x at 623.  Accordingly, Defendants' motion to dismiss Plaintiff's Third Cause of Action is DENIED.

## IV. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS in part and DENIES in part Defendants' Motion to Dismiss (ECF No. 16) as follows:

1. Defendants' Motion to Dismiss is DENIED with respect to Plaintiff's First and Third Causes of Action;

2. Defendants' Motion to Dismiss is DENIED with respect to Defendants' request for qualified immunity;

3. Defendants' Motion to Dismiss is GRANTED without leave to amend with respect to Plaintiff's Second Cause of Action; and

4. Any claims arising prior to September 15, 2015, and any claims asserted against Defendants in their official capacities pursuant to 28 U.S.C. § 1983 are hereby DISMISSED without leave to amend.

Defendants shall file an answer to the FAC not later than 30 days after the electronic filing of this Order.

IT IS SO ORDERED.

DATED:  November 30, 2020

Troy L. Nunley
United States District Judge